**NEW ORLEANS SAINTS and John W. Mecom, Jr., Plaintiffs-Appellants,**

v.

**Alvin GRIESEDIECK, Jr. and Falstaff Brewing Corp., Defendants-Appellees.**

No. 85–3326.

United States Court of Appeals, Fifth Circuit.

June 4, 1986.

Russell J. Schonekas, Catherine Maureen Blackburn, Berrigan, Danielson, Litchfield, Olsen & Schonekas, New Orleans, La., for plaintiffs-appellants.

Rutledge C. Clement, Jr., Amelia J. Williams, Taryn S. Southon, Phelps, Dunbar, Marks, Claverie & Sims, New Orleans, La., for Griesedieck & Falstaff Brewing Corp.

Before WILLIAMS, GARWOOD, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

The New Orleans Saints, a Louisiana partnership ("Saints"), and John W. Mecom, Jr., the former majority partner brought a diversity action against Alvin Griesedieck, Jr., a minority partner, and the Falstaff Brewing Corporation, seeking to void the sale of Griesedieck's partnership interest to Falstaff, and to dissolve Griesedieck's 1968 purchase of his partnership interest from Mecom. Defendants prevailed in the bench trial, 612 F.Supp. 59, and plaintiffs appeal several alleged errors of Louisiana law.

Finding no error, we AFFIRM.

In 1967, the New Orleans Saints were formed under the partnership laws of Louisiana for the operation of a National Football League (NFL) franchise. There were originally seven minority partners. Mecom was the majority partner. On February 15, 1968, Mecom transferred two percent of his 65 percent interest to Griesedieck pursuant to a Sales Agreement. The Partnership Agreement was later amended to recognize Griesedieck, a director and marketing vice-president of Falstaff, as a partner. Falstaff was essentially a family corporation; although publicly traded, its stock was controlled by the Griesedieck family. Mecom later purchased the interests of all the minority partners except for the two percent interest owned by Griesedieck. On May 31, 1985, Mecom sold his 98 percent interest to Thomas Benson, Jr.

The Partnership Agreement contained the following provisions.

8(a). No partner, other than the partner owning more than fifty percent interest in the partnership ('fifty percent interest partner'), shall have the right to sell or transfer his interest in the partnership unless he sells his entire interest, and unless and until he shall have first offered it for sale to the fifty percent partner.

.   .   .   .   .

12. Any attempted sale of an interest in the partnership in violation of the provisions of these Articles shall be null and void....

The Sales Agreement reflecting the sale by Mecom of a two percent interest to Griesedieck contained the following provision:

1. John W. Mecom, Jr., ("Mecom") owner of a sixty-five percent (65%) interest in the Louisiana partnership known as New Orleans Saints ("Saints") in consideration of (a) the prompt payment to Mecom by Alvin Griesedieck, Jr. ("Transferee") of the sum of $140,000.00, (b) the capital contributions which will be made to the said partnership by Transferee and *(c) other agreements between the parties,* does hereby sell, assign, transfer and convey unto Transferee a two percent (2%) interest in the Saints out of the interest of Mecom ($2/100$ths interest out of the $65/100$ths interest of Mecom). (Emphasis added.)

On February 25, 1982, Griesedieck transferred his two percent interest in the partnership for a nominal sum to Paul Kalmanovitz as trustee for Falstaff. Griesedieck did not offer to sell his interest to Mecom prior to this transfer. Mecom and the Saints then filed suit.

The critical issue at trial was whether Griesedieck had purchased the two percent interest in 1968 for himself or as nominee for Falstaff. If he purchased the interest for himself, then the 1982 transfer from Griesedieck to Falstaff was a sale violating the Partnership Agreement because Mecom's right of first refusal was not respected. If Falstaff purchased the two percent interest in 1968 with Griesedieck acting only as nominee, then the 1982 transfer was not a sale at all, but a mere internal transfer of a nominee's duties, to which the partnership restrictions would not apply.

Mecom and the Saints introduced into evidence various documents but rested without producing a witness. Griesedieck and Falstaff's defense consisted primarily of parol evidence, introduced over objection, and brought out through the testimony of five witnesses and extrinsic documents. The district court held that the parol evidence offered by the defendants was admissible to show that the Mecom-Griesedieck Sales Agreement and the concomitant amendments to the Partnership Agreement were only parts of an entire oral contract. The parol evidence overwhelmingly indicated that Falstaff was the true original transferee in 1968 of the two percent interest from Mecom, that Griesedieck had been Falstaff's nominee in the transfer, and that Mecom and the Saints were aware of Falstaff's status as partner. This device had been used in order to avoid the "Roselle Rule," an unwritten NFL rule that forbade a public corporation from owning any part of an NFL franchise. The "Roselle Rule" was designed to maintain the secrecy of player salaries by avoiding the disclosure requirements applicable to public corporations. Appellants' case rested on the contention that they took Griesedieck as owner of the two percent interest for himself only, and that they were unaware he was acting as nominee for Falstaff. The judge, however, found Mecom's testimony in particular, as an adverse witness, less than credible. Judgment was rendered in favor of defendants.

Louisiana law in force at the time suit was brought stated the parol evidence rule as follows: "Neither shall parol evidence be admitted against or beyond that which is contained in the acts, nor on what they may have said before, or at the time of making them, or since." *See* former La. Civ. Code Ann. art. 2276 (now recodified in scattered sections of the Civil Code). Appellants assert that the parol evidence rule prevents the admission of evidence extrinsic to the Sales Agreement and the Partnership Agreement because the contracts are facially unambiguous. Neither the Sales Agreement, stating that Griesedieck is to be a partner, nor the Partnership Agreement, amended to include Griesedieck, mentions Falstaff. Consequently, they contend, when Griesedieck later transferred his interest to Falstaff with Kalmanovitz as trustee, without first offering his

two percent to Mecom, there was a violation of the Partnership Agreement.

The agreements' alleged lack of ambiguity is not pertinent. The Louisiana parol evidence rule is subject to numerous exceptions including that the written instrument is only part of an entire oral contract. In *Gulf States Finance Corp. v. Airlines Auto Sales Inc.,* 248 La. 591, 181 So.2d 36 (1965) the court, considering "an instrument ... required to be in writing or where the parties adopt that mode of contracting," said that "[i]t may not be. contended that, *as between the parties to an instrument* parol evidence is incompetent ... *to show that the writing is only a part of an entire oral agreement between the parties." Gulf States,* 181 So.2d at 38 (emphasis in original). *See also Gautreau v. Modern Finance Company of Gonzales, Inc.,* 357 So.2d 871, 872 (La.App. 1st Cir.1978).

■ Appellants augment their position with the argument that the Sales Agreement is a contract for immovable property which Louisiana law requires to be written. La.Civ.Code Ann. arts. 2275, 2834, 2845. *See Torrey v. Simon-Torrey,* 307 So.2d 569, 572–73 (La.1974); *Vales v. Doley,* 297 So.2d 532, 534–35 (La.App. 4th Cir.), *writ denied* 302 So.2d 14 (1974); *Hayes v. Muller,* 245 La. 356, 158 So.2d 191, 198 (1963). Further, under La.Civ.Code Ann. art. 2836, the partnership agreement for a partnership holding real estate must be in writing. *See Gulf Union Mortg. Co. v. Michael &*

*Barber Constr. Co.,* 251 So.2d 459, 462 (La.App. 1st Cir.1971); *American Bank & Trust Co. v. Michael,* 244 So.2d 882, 883–84 (La.App. 1st Cir.) *app. denied,* 258 La. 368, 246 So.2d 685 (1971). *Wolf v. Whitney,* 424 So.2d 300, 303 (La.App. 1st Cir.1982), *cert. denied,* 428 So.2d 807 (La.1983) likewise holds that the sale of an interest in a partnership which owns immovable property must be in writing. These contentions regarding immovable property founder hopelessly on the facts of this case. This Partnership Agreement was amended to include Griesedieck in 1968, and the transfer from Griesedieck to Kalmanovitz occurred in 1982. The acquisition of real estate did not occur until 1984—two years after the commencement of litigation. For the purposes of this action, the disputed agreements did not include or relate to immovables. The parol evidence rule with respect to contracts for immovables therefore does not apply.[1]

■ Respecting the view of Louisiana courts that the parol evidence rule "has not been strictly applied and numerous exceptions have developed," *Gautreau,* 357 So.2d at 872, we conclude that the district court did not err in admitting parol evidence.[2]

■ Appellants assert that Griesedieck's transfer to Kalmanovitz was a breach of an implied resolutory condition requiring that Griesedieck first sell to the

1. Even if the Sales Agreement were a contract for immovables the "entire oral agreement" exception to the parol evidence rule might still apply. Cases cited by Appellants are not to the contrary; each either expressly allows for exceptions to the parol evidence rule or leaves the question open.

Moreover, there is, arguably, authority for the position that the "entire oral agreement" exception is applicable to the contracts for immovables. In *Ferace v. Fullerton,* 425 So.2d 393 (La.App. 3rd Cir.1982), an action concerning the amount of mortgage to be assumed in a sale of real estate, the court states that "it is a well-established exception to the parol evidence rule that, as between the parties to a written instrument, parol evidence is admissible to show that the writing is only part of an entire oral contract. *Hyatt v. Hartford Accident and Indemnity Company,* 225 So.2d 102 (La.App. 3rd Cir.1969);

*McCarthy v. Plaisance,* 286 So.2d 454 (La.App. 1st Cir.1973), *writ refused,* 289 So.2d 156 (La. 1974)." *Ferace,* 425 So.2d at 395. The *Ferace* court noted the obvious connection between assumed mortgage and purchase price, and stated that "[a]ny alleged alteration of the purchase price would bear upon defendant's principal cause for entering into the contract, and, as such, parol evidence would be admissible to prove that fact...." *Id.* In a contract creating a partnership, who the real partner is may be as much a "principal cause for entering into the contract" as mortgage or price in a real estate sale might be. This exception to the parol evidence rule would thus be here equally justified.

2. Appellants failed to raise other parol evidence related defenses at trial and have therefore waived them.

majority partner. This contention must fail in view of the finding that no transfer of ownership was effected because Falstaff was the true owner from the time of the 1968 sale.[3]

The finding of no actual transfer also vitiates Appellants' theory that Louisiana law effective in 1968 forbade Falstaff to participate as a partner without the other partners' consent. *See* former La.Civ. Code Ann. art. 2805. The parol evidence shows and the trial judge concluded that there was a unanimous partner vote to amend the Partnership Agreement to allow Griesedieck, and *sub silentio* Falstaff, to become a partner. Partners' consent therefore was obtained in 1968, and no further consent was necessary in 1982 because in fact no sale to a corporation occurred in the transfer from Griesedieck to Kalmanovitz.

For the foregoing reasons the judgment of the district court is AFFIRMED.

---

**3.** Even if there were a transfer of ownership violating a resolutory condition (the right of first refusal appears actually to be not a resolutory condition, but an ancillary obligation), resolution is warranted only if the unrendered performance was the cause (consideration) for which the contract was made. *Makofsky v. Cunningham,* 576 F.2d 1223, 1323–33 (5th Cir. 1978). That is not the case here; Mecom did not enter the contract in order to have the right of first refusal.